IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-cr-00404-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ZACHARY LAWHEAD,

       Defendant.

_____

**MOTION FOR DOWNWARD VARIANCE TO 82 MONTHS**
_____

Zachary Lawhead, through counsel, requests this Court accept the recommendation contained in the PSIR and sentence Mr. Lawhead to 82 months in the Bureau of Prisons. In support:

**I.**    **THE COURT SHOULD VARY DOWNWARD SO AS NOT TO CREATE AN UNWARRANTED SENTENCING DISPARITY BETWEEN MR. LAWHEAD AND OTHER DEFENDANTS WHO HAVE PLEADED GUILTY PRIOR TO METHAMPHETAMINE PURITY ANALYSIS.**

The advisory guideline range in this case is driven, in part, by the purity of the methamphetamine. The total converted drug weight in this case is 295.66 kg, resulting in a base offense level 24. ECF Doc. 33, PSIR, ¶ 21. If purity analysis had not been done in this case, the converted drug weight would be 70 kg, resulting in an offense level 20. The resulting guideline range, after acceptance of responsibility, would have been 70 to 87 months, as opposed 92 to 105 months. The government elected to have purity analysis done at the DEA laboratory before Mr. Lawhead was writ to federal court. If the government had given Mr. Lawhead the opportunity to plead guilty prior to purity

1

analysis, as it does in many other cases in this District, the guideline range would be lower. When the government elects to conduct purity analysis on some methamphetamine cases and not others, it sets up a sentencing disparity amongst similarly situated defendants.

The guideline disparity ratio between methamphetamine (actual) and methamphetamine is ten to one. The sentencing guidelines appear to justify the disparity because drug purity "is probative of the defendant's role or position in the chain of distribution." U.S.S.G. § 2D1.1, App. Note 27(C). "[T]here was once some truth to the Commission's assumption that large quantities are associated with high purities, because methamphetamine was cut as it worked its way down to the street-level dealer or user, but that is no longer the case." *United States v. Nawanna,* 321 F.Supp. 3d, 943, 951 (N.D. Iowa, 2018). Methamphetamine per-gram purity levels averaged above 90 percent according to the DEA's 2019 National Drug Threat Assessment.[1] "[B]ecause today's methamphetamine is substantially pure, purity it is not a proxy for relative culpability" and "can lead to perverse sentencing outcomes." *Id.* At 948.

There is no question Mr. Lawhead is a low-level street dealer who distributes methamphetamine and heroin to support his own addiction. Mr. Lawhead used between three to five grams of methamphetamine, and between one and three grams of heroin, per day. ECF Doc. 33, PSIR ¶ 76, 77.

The government does not appear to have a published policy on when methamphetamine cases are sent to the laboratory for purity analysis. The decision

---

[1] https://www.dea.gov/sites/default/files/2020-01/2019-NDTA-final-01-14-2020_Low_Web-DIR-007-20_2019.pdf

appears to be completely arbitrary and left to individual prosecutors. Judge Winmill in the District of Idaho explained the arbitrariness as follows:

> The reasons why testing is or is not performed in any case are completely arbitrary. In many cases, only some of the drugs were seized and available for testing. In others, the lab was too busy to complete testing before sentencing. In some, the wise defendant plead guilty early in the case so that sentencing would occur before testing could be completed. In many cases, the prosecution originated with a state agency where testing could not be completed in a timely manner. Regardless, none of the reasons relate to the defendant's culpability or the danger which he or she poses to society.
>
> *United States v. Hartle,* 2017 WL 2608221 (D. Idaho, 2017).

Anecdotally, it appears in the District of Colorado, cases investigated by federal agents are sent to the DEA laboratory, where purity analysis is standard. In cases where a defendant is arrested by local law enforcement and charged initially in state court, the government does purity analysis in some instances and does not in others. Other districts have ascertained that the arbitrariness also appears in cases where prosecutions originated in state court. *See, United States v. Rodriguez*, 382 F.Supp. 3d 892, 897 (D. Alaska, 2019); *United States v. Swanson*, 2019 WL 3761629 (D. Idaho, 2019).

There may be some justification for a higher guideline based on purity. For example, if a defendant turns down an offer to plead guilty before testing, requiring the DEA laboratory to use resources for testing; or, an arrest after a targeted federal investigation, whereas, an arrest by local police officers is more likely to be happenstance. For Mr. Lawhead, the purity testing appears arbitrary.

## II. MR. LAWHEAD'S ADDICTION FUELED HIS CONDUCT

Mr. Lawhead first used methamphetamine when he was 13 years old, and he was a daily user by age 15. He first used heroin and opiate pills at age 14 and became addicted in his early 20's. Mr. Lawhead also suffers from alcoholism. ECF Doc. 33, PSIR ¶ 73, 76, 77. Mr. Lawhead has been self-medicating to deal with anxiety and depression. Mr. Lawhead hopes to get substance abuse and mental health treatment. He is requesting this Court recommend he participate in RDAP.

While Mr. Lawhead admits he had the intent to distribute the narcotics on his person, the quantity of methamphetamine was close to what he would personally use in a few days.

## III. A TEN MONTH VARIANCE FROM THE GUIDELINES IS APPROPRIATE

Mr. Lawhead agrees with the probation officer's recommendation that a slight downward variance is warranted to account for the time Mr. Lawhead has spent in pre-trial custody. Mr. Lawhead is detained in Washington County where he has no access to programming. If he were in the CDOC, he would likely earn time-credit for programs and good behavior. Because he was brought to federal court after receiving the state sentences, he is missing out on the opportunity to earn credit.

## CONCLUSION

A sentence of 82 months, or nearly 7 years, is a long time. This sentence is significantly longer than any other sentence Mr. Lawhead has received. Mr. Lawhead will need to finish his state sentence before he even begins serving a federal sentence. He is not eligible for parole until December 2023, and his mandatory release date is

June 2026. The combined total time that Mr. Lawhead will spend in custody could be more than a decade. A sentence of 82 months is sufficient but not greater than necessary.

                                              Respectfully submitted,

                                              VIRGINIA L. GRADY
                                              Federal Public Defender

                                              s/Kelly Christl
                                              KELLY CHRISTL
                                              Assistant Federal Public Defender
                                              633 17th Street, Suite 1000
                                              Denver, CO  80202
                                              Telephone:  (303) 294-7002
                                              FAX:  (303) 294-1192
                                              kelly.christl@fd.org
                                              Attorney for Defendant

## CERTIFICATE OF SERVICE

      I hereby certify that on August 31, 2022, I electronically filed the foregoing **MOTION FOR DOWNWARD VARIANCE TO 82 MONTHS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

      Albert C. Buchman, AUSA
      Email: al.buchman@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

      Zachary Lawhead      (via Mail)

      s/Kelly Christl
      KELLY CHRISTL
      Assistant Federal Public Defender
      633 17th Street, Suite 1000
      Denver, CO  80202
      Telephone:  (303) 294-7002
      FAX:  (303) 294-1192
      kelly.christl@fd.org
      Attorney for Defendant