IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:21-cr-00404-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    ZACHARY LAWHEAD;

    Defendants.

**GOVERNMENT'S RESPONSE AND OBJECTION TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE TO 82 MONTHS [ECF-34]**

The United States of America (the "Government"), by and through Cole Finegan, United States Attorney for the District of Colorado, and Daniel R. McIntyre, Assistant United States Attorney, hereby submits the Government's response and objection to the defendant request for a variant sentence. [ECF-34]. The defendant's base offense level is 23, and his criminal history category is VI. That results in an advisory guideline range of 92-115 months. The defendant seeks a variance of 10 months from the bottom of the guideline range for a final sentence of 82 months. Based on the defendant's lengthy and escalating criminal history, and the fact that he is already receiving credit for his time in federal custody toward his state sentences, a variance is not warranted. The court should impose a guideline sentence of 92 months, to be followed by four years of supervised release.

**I.     Nature and circumstances of the offense**

In this case, the defendant was a target for arrest based on three outstanding warrants related to serious criminal law violations in Colorado. Officers were able to contact the defendant as he walked from his apartment to a stolen truck which he was known to be driving. When he was searched, officers recovered a loaded firearm and controlled substances packaged for distribution, including six balls of heroin and three baggies of methamphetamine.

Although the underlying facts of this case are not particularly aggravated, relatively speaking, the circumstances in which the defendant committed this act makes its commission more aggravated than it appears on the surface. Specifically, the defendant had recently obtained convictions for 1) Second Degree Assault, 2) Possession with Intent to Distribute Methamphetamine, and 3) Possession of Heroin and Methamphetamine. *See* [ECF-35, ¶¶ 50-52]. The defendant pled guilty in those three cases on July 29, 2021 and was sentenced to suspended terms of incarceration of up to five years, conditioned on successful completion of terms of probation. Less than two months later on September 15, 2021, a warrant was issued in each of the three cases based on the defendant's failure to comply with the terms of probation. Only about a month and a half later while those warrants were pending, the defendant committed this offense, again with drugs he was selling as well as a loaded firearm and stolen truck.

**II.      The defendant has a lengthy history of significant criminal convictions, and the danger and seriousness of his convictions has been escalating**

The defendant, at 35 years old, has spent more than half of his life involved in the criminal justice system. Significantly, his criminal activity has escalated in seriousness from the time he was 17. At 17, the defendant obtained two convictions/adjudications, both involving weapons. As an adult the defendant has obtained 20 convictions for a large variety of criminal offenses, including seven felony convictions (eight if the assault in paragraph 41 is counted, which meets the federal definition of a felony). Although the defendant has obtained numerous driving under the influence and other traffic convictions, he has also obtained convictions for property crime and crimes against people.

Of those convictions, the most concerning are the three most recent for which the defendant was on probation at the time he committed this offense. Those convictions are the most concerning because of their recency and similarity to the present offense. In the assault case, the defendant was armed and demonstrated a willingness to use extreme violence for basically no reason at all. [ECF-35, ¶ 50]. In that case, after an ex-girlfriend went to the defendant's house to recover some personal items, without any apparent provocation, the defendant intervened and tried to prevent the female and an accompanying male from leaving. The defendant quickly escalated when he pulled a gun and pistol whipped the male. When the male and female were finally able to drive away, the defendant fired two shots at the car hitting the male. *Id*.

In the other two cases, the defendant possessed controlled substances with the

intent to distribute them. [ECF-35, ¶¶ 51 and 52]. In one of the cases, the defendant was armed and resisted officers. [ECF-35, ¶ 51]. In that case, the defendant was in a stolen car, was armed and tried to flee the officers seeking to contact him.

### III.     The defendant's stated bases do not support a variant sentence

The Court should not vary because a hypothetical case where purity analysis was not done would result in a lower guideline. In this case, the purity analysis was complete and must be considered as a circumstance of the offense. The defendant asserts that the historical justification for the 10:1 ratio of methamphetamine (mixture and substance) and Methamphetamine (actual) is based on the idea that purity is a proxy for position on the drug distribution chain. In support of this proposition, he cites to U.S.S.G. 2D1.1, Application Note 27(C). However, that application note simply notes for a sentencing judge a circumstance to consider that may apply to certain controlled substance distribution cases, notably not including methamphetamine cases. To the extent that reasoning formed part of the justification for the distinct treatment of methamphetamine cases based on purity, it is not the only one. The government agrees that the defendant is not a kingpin and does not appear to be particularly high up in any distribution network, but that does not necessarily minimize the danger to society from his repeated conduct.

Beyond position in a drug distribution chain, there are other valid reasons to treat high purity methamphetamine more harshly than low purity methamphetamine. Pure methamphetamine is not the same as a substance with 10% methamphetamine. Higher purity methamphetamine simply has the potential to cause more societal harm than methamphetamine of low purity. All things being equal, higher purity

4

methamphetamine is more potent so it can be cut to be made into a larger quantity which can feed more addicts. In its pure form, methamphetamine is easier to get high with and is more likely to cause a user to overdose. For those reasons, higher purity methamphetamine is more valuable, which increases the need for its possessor to arm themselves to defend it and, consequently, increases the possibility for violence. That is especially true here where the defendant not only has a history of possessing firearms, but using them. Presumably, if the defendant had been able to connect with a purchaser before being encountered by the police, he would have sold his methamphetamine for the going rate for pure methamphetamine rather than the going rate for an extremely diluted mixture. It is highly doubtful that any methamphetamine dealer would consider a substance with 100% methamphetamine equivalent to one with only 10% while committing his crimes. Instead, the defendant only seeks to equate the two when it suits him at sentencing. These circumstances should outweigh any hypothetical disparity at sentencing.

Also worth noting is that the defendant did not plead to all of the charges in the indictment. Rather, the parties negotiated a plea that resulted in a certain estimated guideline range. Had the government sought and obtained a conviction for Count 4 of the indictment, alleging a violation of 18 U.S.C. § 924(c)(1)(A)(i), the guideline range would have automatically been 60 months higher than it is and the Court would have been required to impose a consecutive 60-month sentence in addition to any other sentence. In other words, any arbitrary result in the guidelines based on the purity of methamphetamine has already been mitigated by the terms of the plea bargain

negotiated by the parties.

The defendant's addiction to controlled substances should also not be considered as mitigation supporting a variance.  If the defendant's assertions in his motion are true, he has been addicted to narcotics for about 20 years.  During that time he has continued to commit crimes and, as noted above, has escalated his criminal activity. Whatever role his drug use has played in this and other crimes, the defendant has failed to seek out or benefit from substance abuse or mental health treatment.  Thus, his stated desire to do so here should be greeted with skepticism and his sentence should not be reduced on that basis.

Finally, the Court should not vary from the guidelines to account for the time spent in federal custody.  The defendant will receive credit for that time toward his state sentence.  While it is theoretically possible the defendant would have had the opportunity to participate in programs which might give him additional credit toward those sentences, he is in federal custody because of his choices and conduct.  Consequently, he should not be given credit here for programs he is not participating in with the Colorado Department of Corrections.

When the defendant's history is considered in light of the facts of this case, the sentence that will best satisfy the sentencing factors listed at 18 U.S.C. § 3553(a) is a sentence of 92 months incarceration, to be followed by a period of supervised release of 4 years.

COLE FINEGAN
United States Attorney

By: *s/ Daniel R. McIntyre*
DANIEL R. McINTYRE
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado  80202
Telephone:   (303) 454-0100
Fax:   (303) 454-0405
E-mail:  daniel.mcintyre@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of September, 2022, I electronically filed the foregoing **GOVERNMENT'S RESPONSE AND OBJECTION TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE TO 82 MONTHS [ECF-34]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*s/ Ian McCandless*
Ian McCandless
Legal Assistant